22-2080 United States of America v. Zachariah Histed Oral argument not to exceed 15 minutes per side. Mr. Belli for the defendant appellant. May it please the court, counsel for the government, my name is Dennis Belli and I represent Zachariah Histed, an admitted chronic drug addict who appeals a 25-year sentence for possession of 122 grams of ice. Mr. Histed might be a poster boy for what a past judge of this court called guideline-itis. Mr. Histed challenges his sentence on both procedural and substantive grounds. There's a number of guideline issues for review by the court, starting with drug quantity. There's no doubt that the actual seizure involved 120 plus grams of ice, yielding a base offense level of 30. The probation officer attributed something like 16 pounds of methamphetamine to Mr. Histed based on informant testimony or statements. What do you think should be added to the 122 grams of ice? Is there any amount that you think fairly should be added? No, I don't think so. It comes down to this, Judge. You start with the actual seizure and if the judge can determine an additional amount based upon a sound methodology, then the base offense level can be increased. And in this case, the judge admitted that drilling down into all the testimony that was offered at the hearing, one witness testified that he could not determine the amount of drugs or approximate amount of drugs based on a methodology. So he stated... The drug and the heat-sealed bags, what do we do with that? The judge didn't, in his findings, didn't rely on that. Was there any drug in the heat-sealed bags that were seized from the truck? I believe one bag was tested and there was some residue. But was that measured? Does the evidence or information say it was measured? It was just tested for what it constituted, what kind of drug it was? Yeah, exactly. Well, I couldn't... I think we have case law suggesting that a fair measurement of the drug amount involved can include how much could fit in empty packages that are discovered. I've seen case law to that effect in both our court and other circuits. So if that's true, it seems the district judge gave you the benefit of the doubt quite substantially because the bags could hold pounds of meth. And the judge found that it was ice. So if you say pounds of ice, that easily can get you to the 34 even without the confidential informants. So I think if you... I'm troubled. I just don't understand the endgame of your argument here because if your argument is the judge kind of split the difference, the remedy is a remand, and then the judge very well may find, well, okay, fine, I'm going to find that the bags contained meth and it's going to actually increase. And so there's a risk of that from this argument. I just can't see the judge saying, well, 25 years is not enough, but I suppose... Well, the judge very well may vary down again as he did. Is it appropriate? I think the thrust behind that question is, is it appropriate if you have five bags, one of which had a tiny amount of some kind of meth, is it appropriate then to say, well, each bag could hold two pounds and therefore you should be tagged with 10 pounds of added drugs? No, I think that amounts to speculation. But in this case, the judge simply did not rely on that evidence. Yeah, but if you're asking for a remand, then would the judge not be able to give a better explanation than he gave about how he reached a certain quantity? Well, we're asking for a remand to recalculate the guidelines starting at offense level 30 because the government had its bite at the apple. It could have called witnesses, these informants, to provide firsthand testimony. The judge complained. But the government introduced both the hearsay, I'll admit it, and the judge said that just corroborated. The judge said, and I agree that it wasn't perfectly done, but at the end of the hearing when discussing the 3553A factors, the judge said, I rely on these confidential informants to corroborate what is the physical evidence. And the physical evidence was both the bags and the ledger suggesting amounts that the agent testified were for drugs. So when you put all this together, it strikes me, I still, I just don't see the end game of a remand because the judge, it would not be clear error for the judge on remand to say based on the bags, just to clarify what I think the judge already held, which is the bags combined with the ledger, combined with his history of drug transactions, combined with the confidential informants' testimony, which corroborated the amounts in the bags. I find that it's pounds of meth and it's therefore 34. I just disagree. In fact, he was complaining about the lack. Would you say it would be, so it seems like you're making a procedural objection now, but the judge didn't do enough. Would you say that under clear error review that we would overturn that type of finding because we'd have a definite and firm conviction? I don't know that I would have a definite and firm conviction based on clearer findings. The judge plainly stated that he needs informant testimony so that he can, because it's otherwise too vague when it's the second or third hand. Those CS reports, CS1 and CS2, are part of the record, but they are not things that I ultimately relied on, certainly for the quantities that he is still fighting. What I relied on in those sources only as it was corroborated by other things. So I viewed him as saying I'm not going to primarily rely on the CS informant's testimony. I'm going to only use them to corroborate the physical evidence. That strikes me as perfectly appropriate. I think this line of case law that says splitting the difference is not an approved methodology applies here and ultimately this court. You think it was splitting the difference though? Yeah, sure. Why? The defense wanted level 30, the government and the probation officer said level 34, and he says, well, I don't know exactly. What do you do with the line of case law that we also say when estimating drug quantity that district judge should rely on conservative numbers when it's unclear? So you could arguably say it was just the district judge giving you the benefit of the doubt, or giving your client the benefit of the doubt. I mean, that's another line of our case law. It's well established when evaluating drug quantity. Your point is that a conservative estimate here is to add only the actual physical evidence of drugs, which is the trace amounts in one of the bags. Yeah, which would not have made a difference. You had to get up to 3,000 kilos, right? Right. And I just think this is the law. If the government can prove something with hard evidence, it should, but if it can't, it shouldn't be subject to speculation that we know he was doing more than what he did on this particular day. Can you tell us what these five bags, I didn't really understand what these five bags are. They were heat sealed, and they're empty now? Does that indicate anything? That's my understanding. I wasn't trial counsel, but that's what I read from the record. So I don't know. Sorry, Judge Mathis. I was just going to say only one of the bags was tested. Right. That's my understanding. Counsel for the government can correct me if I'm wrong, but that's my recollection. If we were to remand it, the judge would be able to look at the record and could come to the same determination. Do you agree with that? I wouldn't want to speculate in advance. I'd have to see his findings. But the judge could rely on the record as it is, as it stands now. Yeah, he could do that, yes. Is there a theory for something else that was in the bags? I mean, the bags match the bags that was recovered with the actual drugs. If you look at the pictures and you compare them, it doesn't strike me as implausible for the judge to conclude that these bags, which resembled the bags that had drugs, had drugs in them at one point. Judge, I know I'm not going to win this argument with you. But could the bags be empty, never have had drugs in them? Yeah, I mean, that's possible. So if you want to have a conservative estimate, it would be that there was nothing in the four bags that were not tested, because after all, why didn't the government test them? And there was only residue in one bag, and it was only a little bit. So then the question is, what does that mean? Thank you for making the argument. And the problem in looking at the transcript of the sentencing is that the district judge was not precise in how he reached the amount. And, in fact, he threw up his hands. He was frustrated. Yeah. Dangerous weapon. The rifle and this hand grenade, what we call a paperweight. But why isn't the fake hand grenade a dangerous weapon under our case law? Well, there's two issues there. One, would it persuade somebody that it's real? Perhaps. Well, it did. It did, yeah. But then you go to this clearly improbable connection to the offense, and that's where I think the fake nature of it comes into play, because there's a good argument, a logical inference, that it's clearly improbably related to the offense, because it's just an inert object, a paperweight, and it's not like the defendant brandished, let's say, a fake gun as a tool for intimidating someone in a drug offense. It was just in the vehicle, so the fact that it affected law enforcement and their approach to searching the vehicle, I don't think has any relevance to whether it's a dangerous weapon. Would you agree that it's your burden, once the government shows that it's possessed with conduct, that it's your burden to prove that it's clearly improbable? Yes. That's my understanding. Yeah, I agree with that. And so your argument is that it's clearly improbable just because it was a fake? Right. And that's enough for us to find clear error that it didn't establish? Well, yeah, I think so. If you take that example out of the guidelines about the unloaded hunting rifle in the closet, the commission said, no, that would not be enough. I don't see the difference. An unloaded firearm can still be loaded, but a fake grenade cannot ever be activated. Don't you think that you could just, like, you know, if I have a fake grenade laying around in case I ever have a confrontation, I can pull it out and say, I've got a grenade? Isn't that one plausible view of the evidence? Well, it's a view, but I don't think it's plausible. I don't see any possibility that that's what he was possessing this for. Does the record show where in the truck the grenade was? I believe in the front area. In the floorboard? Yeah, I think so.  I see your red light is on. You want to save your rebuttal time? I will, thanks. Good afternoon, Your Honors. May it please the Court, my name is Dan McGraw. I'm an assistant U.S. attorney in Grand Rapids, Michigan, and I represent the United States in this matter. The district court sentence in this case, below the advisory and properly calculated guideline range, was both procedurally and substantively reasonable. What would you say is the methodology the district court used in finding that this was a level 34 as it relates to the drug quantity? The district court ultimately found that it was a level 32. I'm sorry, 32. And I believe the district court complied with this court's precedent, which holds the district court, when quantity is uncertain, there's no dispute we have 122 grams of ice that he discarded during his flight. But if there's relevant conduct and the drug weight associated with that is uncertain, the district court must estimate. And that estimation must be more likely than not that the defendant is actually responsible for a greater quantity, equal to that or greater than what the judge found. And in this case, that's exactly what Judge Jonker did. He had no quarrel. I think the direct quote was no quarrel, no doubt in his mind, that there's accountability for at least the 150 grams of ice that's on the low end of base offense level 32. I was just going to say, how did he get that? We got the 122 grams. Yes. Where did we get the other as far as the methodology? I believe you said it takes very little, about 300 grams of meth mixture or 300 grams of ice to get squarely in that lower level of base offense level 32. But that doesn't answer Judge Mathis' question. I apologize, Your Honor. How he got there was based on the evidence and testimony that he heard during the hearing from the case agent. He got there based on the drug ledger that was found in the car. And if my math adds up to just a little under $3,000, that's what the agent testified to, that those numbers were dollar amounts. There was the paper plate that said, if you want a quarter pound for $1,100, can do. And then, of course, the five heat-sealed bags that took up most of my colleague's time during his argument that were found in the truck as well, one of which tested positive for methamphetamine residue. Can you explain? I'm sorry, this is a basic question. What exactly are these heat-sealed bags that, according to the record, how, if there's nothing in them, how do we know what was in them for the four that didn't have anything? I think it's a reasonable inference based on the other evidence in this case. So one of them, at least one of them, had residue that was field tested by the agent that came back positive for methamphetamine. So even though that bag is empty, I think given the residue in it, a reasonable inference can be drawn that methamphetamine was at one point in that bag.  Some. The other four bags, how do we have any clue whether that contained marijuana, whether it contained baking powder to mix with the other stuff? How do we know? There's no evidence in the record that there was any other sort of, you know, green leafy substance or anything that looked different in those bags. But they were all found. They were all found. Right? They were empty, Your Honor. So were they sealed still? I don't believe so. They were cut open or they had been opened. Suggesting again. Is that in the record? I don't have my brief in front of me. I did actually include a picture of the heat-sealed bags that were admitted in the district court during the sentencing hearing. I do believe they were opened. There were five heat-sealed bags. They're like food-saver bags that you and I would use to seal up our leftovers and put in the freezer. I think in addition to those five, there were two smaller empty sandwich baggies. All those bags were found, I believe, in a garbage bag in the bed of the pickup truck. The same pickup truck that he used to flee from police, abandon, run out of, and then drop a quarter pound of meth, that was contained in a similar baggie to those empty baggies. I guess that it seems somewhat arbitrary. I understand the reason he picked the number was just to bump it up, it seems to me, to get it from 30 to 32. But the amount of meth that could have been in these bags was quite more than the number he picked, especially if it was ice. If it was ice, the equivalent would have been higher. So there is something to the argument that this was splitting the difference because if you accepted the view that the bags contained meth at one point, it would have been a lot more than what the district court found. That's right, Your Honor, and I think Judge Yonker was not, in his own words, comfortable bridging the gap into Level 34 because then he would have had to rely more heavily on the confidential informant statements, which have already been discussed, and he didn't rely on those when he made his drug weight finding. But after hearing all the evidence and seeing all the evidence, he had no doubt. I think there were at least three points during his findings, overwhelming evidence that this was an ongoing activity, no doubt in my mind, far beyond a preponderance that Mr. Hysted is accountable for more than just the 122 grams that he dropped that night. There are reasonable arguments to suggest that it could be a lot more. That's a quote from page 456. Yes, what do we do with that? Why isn't this a split the difference case? Because it seems to me if you accept as a logical conclusion the fact finding that these bags had meth, you have to, I know this is kind of counterintuitive because it means the district court has to, in some respects, either be all in, so to speak, or reject saying it's just not credible. But is there case law that suggests the district court can engage in, yeah, there's overwhelming evidence that there's a lot more meth, but I'm only going to find this small amount. I think it's consistent with United States v. Fitzgerald, which I discussed at the beginning. That's a 2018 unpublished decision that when we're estimating quantities, when the district court has to estimate drug weight, he has to err on the side of caution, be conservative, tie goes to the defendant, right? Err on the side, pick a smaller amount, and actually find that the quantity could be much greater, that there are reasonable arguments that it could be much greater. That's exactly what Judge Yonker did in this case. But it seems to me that if you were looking at methodology and what methodology is appropriate here, that you would say, okay, they tested the residue and found that it was some kind of meth, and so we should figure out how much did that residue weigh, and definitely attribute that residue in counting up the numbers. But otherwise, there wasn't any actual of either kind of meth found. And so then you have to find something else in your methodology that you can actually point to, assuming that you are the district judge actually doing this orally so that everybody can hear. And I suppose you pointed out to us the drug ledgers, but I don't see in the drug ledgers how you get the particular number that Judge Yonker relied on. The case agent testified to prices of certain quantities of methamphetamine during the hearing, so certainly the paper plate said if you want a quarter pound for $1,100, could do or can do. That could be the quarter pound that he dropped, right? Sure, but it might be a, I'm sorry. The paper plate's in the truck, right?  So, and he jumps out of the truck, climbs over a fence, drops the bag, which has a quarter pound in it. Correct, but the paper plate may be a basis for your methodology of determining what the prices in the drug ledger mean in terms of drug weight. So if we add up those prices in the drug ledger, and like I said, my rough math, my rough math comes over to $2,500, $2,700, and if he's selling or buying a quarter pound of meth for $1,100, that would suggest to me that the ledger would support a drug weight of probably a pound or more of methamphetamine. So aside from the bags, aside from the drug ledger, there was additional testimony from the case agent that they had been surveilling Mr. Hysted for months, electronically and through physical surveillance. And he testified that through July and August of 2022, based on that surveillance, Mr. Hysted took at least 10 trips to Detroit, the same area that he went the night of January 12th, and again, the night before on January 11th, which the agents had identified as his supplier for methamphetamine. You can't make quantity determinations from going to Detroit, can you? Correct, Your Honor, not with any specificity, right? And I think what, I'm not trying to talk past you, but when I look at, and this is from United States v. Tisdale, the district court is tasked with making a reasonable estimate based on physical evidence or testimony. So when we're talking about relevant conduct and holding a defendant responsible for everything that he's done in this case, I think it's going to be often that we don't have specific, unless you have an informant come in, a co-conspirator come in, a co-defendant come in, testify, yes, this was my partner in my drug business. I bought, you know, X ounces of meth from him every week. Of course, then that is a specific way to quantify relevant conduct. I know that in a lot of cases, that actually occurs.  So if the 122 grams that was admitted was what was used for the base offense level of 30, what would be the sentencing guideline range with all of the various enhancements added? What would be the final range, Your Honor? I believe, I'm glad I wrote this down this morning. So base offense level 30 with all the other enhancements the same would be total offense level 36, criminal history category 5, resulting guideline range 292 to 365. So again, the 300 month sentence is squarely within that guideline range. But if we were to find that there was error that was warranted vacating and remanding, the district judge would have to reconsider various things, right? I believe so, depending on what Your Honor's find. But I would encourage the court, again, to look at Judge Yonker's findings when he, you know, determined drug weight. That he had no doubt in his mind after sitting through this two and a half plus hour sentencing hearing that Mr. Hysted's relevant conduct made him responsible for a quantity greater than 122 grams of ice. And to get into that base offense level 32, that's 150 grams of ice. That's only an ounce more of ice. And, you know, he admitted to having a quarter pound, and Judge Yonker heard about all this other evidence that suggests this was an ongoing activity that Mr. Hysted was regularly engaged in the drug trafficking trade. I think it's very hard to drill down on exactly how much to put fairly on him, but I have no doubt that it's more than 122 grams. I'm still, I must say, I'm just confused on the legal. I think I understand your position, Al, is if we think that there's, suppose in a hypothetical case, there's overwhelming evidence for, say, a pound of meth. And the district judge says a half pound. Your view would be that is a conservative approach. And as long as there's evidence for that or greater, that we uphold the sentence. That's consistent with the United States. So is that, are we creating a circuit split with, I know it's other circuits, and you mentioned that in your brief that talked about splitting the difference is bad. And so I'm trying to, how do we distinguish those two scenarios where you're splitting the difference versus where you're just taking a conservative approach by saying I'm only going to find this much and we're allowed to uphold it as long as there's evidence for greater. I think that was my colleague who cited those. Yeah, and they're out of circuit cases, but I generally don't want to create a circuit split. You have to look at the district court's words that he used when he's finding what the drug weight quantity is. If he can't, he didn't use the word split the difference. But if Judge Yonker were to say, well, the government wants 30, or defense wants 30, government wants 34, it's just going to be 32. He didn't do that. We could use appeal then. Right, right. And we could send it back and say, hey, judge, that's wrong. But honestly, I think this is a fair outcome based on everything that Judge Yonker heard, right? I mean, this defendant had, and we're just talking about the evidence in this case. Then Judge Yonker also had to consider the history and characteristics of this defendant, which included five prior felony drug convictions, four of which were for methamphetamine, and he was on parole at the time he was engaged in this activity from the Michigan Department of Corrections for a methamphetamine conviction. So to suggest that this was a one-off, one-time-only deal was so wholly inconsistent with what was found in the truck and this defendant's history that that's why Judge Yonker came to this conclusion, right? And I don't think there's case law from this circuit that requires a standardized methodology or specificity for drug weight, and that's because of cases like this, right, where we have some idea, the defendant's accepting responsibility for a quantity, but we know that there's so much more that he's involved in. That's why I believe United States v. Fitzgerald and Tisdale really are controlling on this issue. If you could address briefly the enhancement for the dangerous firearms, and in particular the grenade. The grenade was in the passenger footwell, is that right, of the truck? The driver's floorboard. The driver's floorboard? Yes, underneath the steering wheel. Okay, and it was a fake grenade. I'd like to clarify the record on that. So it was a real grenade. It just didn't have any explosive material inside of it. It wasn't a plastic, you know, like toy. It was a metal grenade that was incapable of being exploded because it had nothing inside. So real, in fact, that the Michigan State Police Bomb Squad had to X-ray it and cut it in half to make sure that there was... So was it like, then, are you saying it was analogous to an unloaded handgun? Is that what the analogy is here? 100%. And so is there a case that you would point us to to say that if you have jumped out of your truck, run away, dropped some drugs, and there was an unloaded handgun in your driver's side, that this could be, this enhancement would be appropriate? Not in this specific context, but I would cite to Judge Murphy's concurrence in United States v. Tate, 999F3rd, 374 at 389. If a gun loaded or unloaded can certainly be described as a dangerous weapon, certainly I would argue that a grenade, explosive or unexplosive, could be described as a dangerous weapon. Tate cites McLaughlin, a United States Supreme Court case. That's in the context of bank robberies. When a defendant sticks his hand through a shirt or a bag, he's not actually possessing anything, but he's using his hand to feign a dangerous weapon. So you cite a case that I know, so I get to ask about it. But that was only about whether it qualified as a dangerous weapon. I think your friend on the other side would say that it is a dangerous weapon, and the question is whether it was possessed in connection with the crime. And his view is that it's, I'll readily admit it's a dangerous weapon, but I think it's clearly improbable to say under the facts of this case that it was possessed in connection with drug dealing. So what would your response be to that? Not that dangerous weapon point, but that clear connection point. My response is factual. It was found on the floorboard of the pickup truck that he fled from police in, ran out of, discarded a quarter pound of meth. I think the grenade could be used for a variety of reasons that Judge Yonker correctly found. It could be used to slow down the investigation, which is meaningful for someone who's trying to flee from police. It could also be used just like an unloaded gun. Threaten or protect yourself if another drug dealer or someone else tries to assault you, tries to steal your drugs. But it wasn't used for any of these things. Aren't the cases involving someone who robs a drug store or a grocery store and has a toy gun and shows it, those cases are upholding the enhancement because it's being actually used in that crime. And isn't this a difference? That's right. Consistent with the guideline in those cases. The guideline in this case and this court's precedent only requires the government to prove that it was present during the commission of the crime, which is what we did prove. It was present on the floorboard of his truck the night he possessed with intent to distribute 50 grams or more of methamphetamine. Then it becomes the defendant's burden to prove it was clearly improbable for it to be connected to his drug offense. There's no evidence that there was any other reason presented at the sentencing hearing that Mr. Hystad would possess. What do you make of the hunter gun, the guns on the wall analogy from the commentary that this is just he treated it as a paperweight, it was something that he showed his friends? It wasn't weighing down any paper. It would be my response to that. It was in his truck that he was using to facilitate his drug dealing business, which is different than storing hunting guns in your house in a locked cabinet wholly separate from whatever other crimes you're committing. Thank you. Thank you, Your Honors. Regarding this grenade issue, I believe defense counsel introduced some printout from the Internet of a company marketing grenades, fake grenades, as paperweights. I don't think the evidence showed that this was a real grenade that was simply rendered inert. Going back to the drug quantity issue, in the streets this practice of imputing large amounts of drugs, it's known as ghost dope. We have this dichotomy that in trial, if the prosecution is going to prove a drug amount to reach a statutory mandatory minimum threshold, it must do that beyond a reasonable doubt. Then in sentencing we say, well, the standard is much less. It's only a preponderance of the evidence. As if it's really no burden of proof at all, but ask any civil attorney whether the standard of preponderance of the evidence is a weak one, that it's easy to meet, and I think you're going to be met with disagreement. And that's the problem here. The judge says, there's no doubt in my mind that the drugs that this man is responsible for exceeds the actual seizure, but we need a methodology. And this court in Woodside, U.S. v. Woodside, remanded a case, in a case where informants testified because the judge did not have a sound methodology for estimating drugs. So I'm still trying to get in my head the two competing rules you're advocating for. It's not clear to me that the rule you're advocating for is going to be necessarily all that good for defendants writ large, because you're saying that under the government's view, you have to pick the lowest amount or greater that is consistent with the preponderance of the evidence, and so that kind of encourages judges to lean on the side of picking less. But if you get on appeal and we remand because we say it's arbitrary and you either have to pick the bigger number or none at all, it strikes me in more cases that the judge may well pick the bigger number, and that's not going to be good for defendants. That's not necessarily a defendant-friendly rule. I don't think that would be the outcome, though, because if the judge says, well, in my mind, the best we can do is level 32, and you send it back to the court, I just don't think he can say, well, forget that level 32. I'm looking at this new, and I'm going to increase it. Well, one way of reading the record, though, is to just say I'm taking a conservative approach. I think there's evidence here that pounds of meth can be attributed to this defendant. In fact, I think the judge said well over 34. And, I mean, if you remand it back, it's not necessarily going to be best for defendants. I just don't understand. I suppose your response to me is that in most cases the judge is even going to be more conservative. But it's an empirical question. I haven't had too many remands in drug quantity cases, but the ones I've had the judge has made an accommodation upon remand, so I don't know. Thank you. Thank you both. The case will be submitted, and I see that you're appointed pursuant to the Criminal Justice Act, and we thank you for your service.